Johnson, Justice,
 

 delivered the opinion of the court. — This suit was instituted on a policy of insurance on the ship Henry, and on the freight to be earned by her, on a voyage from Teneriffe to Havana, and thence to Hew York: $18,000 on the ship, and $2000 *on were insured in this policy; and another sum of $10,000 on the freight, was insured in a distinct policy, by the same-company. At the trial, the defendants prayed certain instructions to the jury, which the court gave, and added a further instruction in their favor, in pursuance of which, the jury found for the defendants below. The question is, whether the instructions so given were conformable to the law of the case. This must depend upon the construction of the policy, as modified by the representations made at the time of the contract.
 

 The vessel, it appears, was at Tenerrffe, when the order for insurance was written, and had engaged in the transportation of Spanish property, to be covered as American, in the manner specified in the representation. By the charter-party, John Paul Dumeste appears as the owner and afEreighter of the goods, and the voyage stipulated for is precisely that insured against, to wit, from Teneriffe to Havana (under the disguise of Hew Orleans) with liberty to put into Matanzas, and from Havana to Hew York. There is no imputation of unfairness ; the nature of the voyage was distinctly understood between the parties ; and the only question which goes to the negation of the right of recovery of freight altogether, is raised upon the supposed termination of the voyage insured against, at Matanzas, and the actual receipt there of the whole freight insured. And as against the sum insured on the vessel, the defendants insist, that the act of taking in a cargo at Uavana> which was not permitted by the contract of insurance, avoided the contract. The argument is, that the insurance was altogether confined to the voyage stipulated for under the charter-party. And it has been contended, that the voluntary surrender of that contract at the Matanzas, put an end to the voyage, or to the adventure insured. That the receipt of a compensation, by way of compromise, for the $7000 freight, stipulated for on the voyage from Havana to Hew York, was in fact the receipt of the whole freight on that voyage. And lastly, that taking in a cargo at the Havana, not in contemplation under the charter-party or representation, put an end to the insurance on the vessel, and discharged the underwriters altogether.
 

 It is obvious, that if this case be disposed of upon the contract, as exhibited on the face of the policy, the right of the plaintiff to recover would be unquestionable. The defendants, however, avail themselves of the right of insisting on the contract, such as it really was, in the intendment of the parties, whatever the policy might purport on its face. The benefit of
 
 *135
 
 the same principle, therefore, cannot be withheld from their adversary ; and accordingly, the existence of the charter-party becomes altogether an immaterial circumstance in the case. No mention of it was made in the representation ; and the voyage might have been prosecuted without it. The representation was *the document to which the parties were referred for their respective undertakings. Engaging in a voyage different from that, whether with or without a charter-party, would have vitiated the contract. But a charter-party so strictly conforming to that representation, would only leave the parties where it found them ; and answered no other purpose, than to furnish the authentic evidence of freight engaged, in case of loss, while sailing under it. And this is the whole effect of the cases cited to sustain this supposed intimate and mutual dependence between policies and charter-parties.
 

 Has, then, the representation been complied with substantially ? This depends upon the real nature of the voyage insured ; in considering which, it is obvious, that although it was indispensable, that the American mantle should be thrown over the cargo, it was by no means so, that the cargo should continue to need the protection of that mantle. It would be as reasonable, to contend, that, if Spain had ceased to be a belligerent, or John Paul Dumeste, instead of being the nominal, had become the real owner of the cargo, the contract of insurance would have been avoided. We consider a representation of property, being covered as American, as substantially complied with, if the property be actually American : and as the presence and agency of John Paul Dumeste, had the cloaking of the property as their sole object, that his presence was dispensed with, when the cargo became actually American.
 

 So much for the national character of the shipper. And as to his identity, we see nothing in *the contract to prevent the change which took place under the transactions at Matanzas and the Havana. It is very clear, that, provided John Paul Dumeste had continued in the capacity of supposed owner, the representation would have admitted of taking in a cargo from the Havana, belonging to any other Spanish subjects than the shippers from Teneriffe. The plaintiff, then, was not bound by anything in the representation, to hold the original shippers to their contract, but was left at large, as in all such carrying voyages, to do the best he could for himself, in earning freight ; provided the cargo still continued covered as American. He was, then, at liberty to change the actual shipper ; and he has done nothing more in compounding with the Spanish charterers, and putting his vessel up as a general ship at the Havana.
 

 But it is contended, that by the composition made at the Matanzas, the plaintiff has actually received what he is now suing for, to wit, his freight from Havana to New York. Plausible as this argument appears, we are of opinion, that the facts will not sustain it. The sum received in composition, to wit, $'7000 (from which, we presume, was deducted both primage and specific compensation, as stipulated for under the charter-party), could not have been for the hire of the vessel to New York. To say nothing of the difference in amount, what interest could the first charterers have had in sending her empty to New York ? The true understanding of the arrangement is, that those shippers purchased *a release from the obligation to find a cargo for New York, and thus avoided paying the sum of
 
 *136
 
 $7000. The master then took the risk of not being able to procure a freight for the last port of his voyage. This was the consideration of the composition paid him, and events proved, that he made a very hard bargain for himself, and a very beneficial one for the underwriters. Had the vessel taken in full freight from the Havana for New'York, it might have been a question, upon the loss happening, whether the underwriters were entitled to deduct the $7000 so received ; but in the present state of facts, no question can be raised upon it, but that which has been raised, to wit, whether it operated as a receipt in full to the underwriters, for all freight that might, by possibility, be engaged on the remaining voyage. We have expressed our opinion that it did not.
 

 With regard to that part of the instruction which was voluntarily given by the court, it is necessary to remark, that although it does not appear to have been moved by the defendants’ counsel, yet it was on a point certainly presented by the case ; and as it is one on which this cause may, by possibility, be again brought up to this court, it is proper now to decide it. So far as relates to the policy on the ship, there can be no difficulty. The plaintiff is entitled to the whole or nothing. We are of opinion, that he was entitled to the whole. But as the plaintiff demands only the sum of $420 for freight from the Havana, the question arises, whether, in this form of action, he could recover less than the *$2000 specified in the contract, and claimed by the writ. On this point, the court charged the jury,
 
 “
 
 that the whole must be recovered, or no part of it could be recovered ; that the party could recover either of the two sums claimed, entire, without the other, but not a portion of either without accounting for the residue.”
 

 On this subject, this court is satisfied, that the law of the action of debt is the same now that it has been for centuries past. That the judgment must be responsive to the writ, and must, therefore, either be given for the whole sum demanded, or exhibit the cause why it is given for a less sum. Otherwise
 
 non constat,
 
 but the difference still remains due. That this is the law, where an entire sum is demanded in the writ, and shown by the counts to consist of several distinct debts, is established by the case of
 
 Andrews
 
 v.
 
 De la Hay
 
 (Hob. 178) ; that the law is the same, where an entire sum is demanded, and only half of it established, is laid down expressly in the case of
 
 Speak
 
 v.
 
 Richards,
 
 in the same book (209, 210), and adjudged in the case of
 
 Grobbam
 
 v.
 
 Thornborough
 
 (82), and in the more modern case of
 
 Ingledew
 
 v.
 
 Crips
 
 (2 Lord Raym. 814-16). Our own courts, in several of the states and districts, have also recognised and conformed to the same doctrine. And the same cases establish, that the requisite conformity between the writ and judgment, in the action of debt, may be fully complied with, either by the pleadings, the finding of the jury, or a
 
 remitter
 
 *entered by the plaintiff, either before or after verdict, or. even after demurrer. If, therefore, the instruction to the jury on this point, was intended to intimate, that they could not find for the plaintiff any less sum than the $2000 valued on the freight, we deem it exceptionable ; inasmuch as the plaintiff had a right to claim a verdict for the freight established by the evidence, and enter a
 
 remitter
 
 for the difference,
 
 (a)
 

 
 *137
 
 There was another question made by the defendants’ counsel, on the argument, which had relation to the
 
 quantum
 
 of the sum to be recovered for freight under this policy. It was contended, that it ought to be reduced, by reference to the ratio which it bears to the other policy executed on the same freight. But we decline deciding the point, as well because it is not brought up under the bill of exceptions, as because we cannot discover how it can affect the interests of the parties, since both policies were executed between the same parties, upon the same representation.
 

 Judgment reversed, and a
 
 venire de novo
 
 awarded.
 

 Judgment. — This cause came on to be heard, on the transcript of the record of the circuit * court of the United States for the district of Maryland, and was argued by counsel: On consideration whereof, this court is of opinion, that the said circuit court erred in the first and second instructions given to the jury, as prayed for by the defendants’ counsel, and in the voluntary opinion of said circuit court, so far as the said opinion was intended to instruct the jury, that they could not find any less sum than two thousand dollars valued on the freight. It is, therefore, adjudged and ordered, that the judgment of the said circuit court of the United States for the district of Maryland, in this case, be and the same is hereby reversed and annulled : and it is further ordered, that said cause be remanded to said circuit court, with instructions to issue a
 
 venire facias de novo.
 

 (a)
 

 This question respecting the action of debt, is so fully discussed and settled in the case of the United States v. Colt, Peters C. C. 145 that the editor has taken the
 
 *137
 
 liberty of subjoining, in the Appendix to the present volume, Note II., the very able judgment of Mr. Justice Washington in that case.