[Malone, *et. al.*, Trustees v. Lacroix.]

# Malone, *et al.*, Trustees *v*. Lacroix.

### *Statutory Action of Ejectment.*

1. *Trusts and trustees; appointment of succeeding trustees.*—Under a deed executed to named persons as trustees of the "Methodist Church at Athens" providing in the *habendum* that the property should be held to such trustees "And to their successors in office chosen and appointed according to the statute of the State of Alabama," where the register in chancery duly appoints certain persons as successors to the original trustees, as "Trustees of the 'Methodist Episcopal Church, South,'" the persons so appointed succeed to the legal title of the property described in the deed, and the variance, if any, applies solely to the *cestui que trust.*

2. *Evidence; judicial knowledge.*—Courts will take judicial knowledge of matters of general history, and under that rule will take judicial knowledge of the division of the Methodist Episcopal Church into the Methodist Episcopal Church, North, and the Methodist Episcopal Church, South, and of the territory over which jurisdiction was to be and has been exercised by the respective subdivisions, and of the articles of separation, with reference to a territorial division of the common property.

3. *Pleading and practice; non-suit with bill of exceptions.*—Where on a trial the court excludes certain evidence offered by the plaintiff, which was necessary to a recovery, he may take a non-suit with bill of .exceptions, although at the time he had not made other necessary proof, which proof, he stated at the start, that he expected to make.

4 *Ejectment; title of plaintiff.*—In an action of ejectment, the plaintiff must recover on the strength of his own title, and not on the weakness of the title of the defendant.

APPEAL from the Circuit Court of Limestone.

Tried before the Hon. O. KYLE.

This was a statutory action of ejectment, brought by George Malone, Ernest Hine, R. H. Richardson, T. J. Turrentine, J. J. Turrentine, H. M. Lewis, T. M. Hobbs, W. T. McDonald, and Theo Westmoreland, as trustees of

42

the Athens station of the Methodist Episcopal Church, South, against Ida R. LaCroix. As part of their testimony, plaintiffs offered in evidence the proceedings before the register in chancery of Limestone county, appointing them trustees of the Methodist Episcopal Church, South, under the deed set out in the opinion, which proceedings were not allowed in evidence by the court. The opinion sufficiently sets out the evidence and rulings of the court, on which it is based. The plaintiffs took a non-suit with bill of exceptions, on the ruling of the lower court excluding evidence of their appointment as trustees.

W. R. WALKER and T. C. McCLELLAN, for appellants. —On appointment of trustees of an express trust, upon the death, resignation or removal of former trustees;— Code, § 4193; *Allison v. Little*, 85 Ala. 512. Courts will take judicial notice of the division of the Methodist Episcopal Church in America, in 1844, and its separation into two churches, one north and one south of a common boundary line.—*Humphrey v. Burnside*, 4 Bush (Ky.) 215. The general conference of the Methodist Episcopal Church had no proprietary interest in preachers, or preaching, or houses; and could transfer only its jurisdiction over them.—*Gibson v. Armstrong*, 7 T. B. Monroe 481. A division of a church, made in pursuance of proper authority, carries with it a division of the common property of the organization.—20 A. & E. Enc. Law (1st ed.), 809; *Smith v. Swormstedt*, 16 How. 288; *Brooks v. Shacklett*, 13 Grat. (Va.) 301; *Reeves v. Walker*, 8 Bax. (Tenn.) 277; *Wheelock v. First Prest. Ch.*, 119 Cal. 844; 102 N. C. 455; 79 Va. 455; 79 Va. 405. Where courts will take judicial notice of facts, it is not necessary to prove them.—*Hatch v. Dunn*, 11 Tex. 708. The exclusion of evidence of appointment of plaintiffs as trustees entitled them to a non-suit with bill of exceptions to test the ruling of the court, without completing their testimony.—*Allison v. Little*, 85 Ala. 512; *McDonald v. Wood*, 118 Ala. 589; *DeLoach v. Robbins*, 102 Ala. 288; *Levinson v. Edwards*, 79 Ala. 293; *Hubbard v. Baker*, 48 Ala. 291; *Myers v. Crowell*, 17 Ala. 227.

[Malone, *et. al.*, Trustees v. Lacroix.]

W. T. SANDERS and R. W. WALKER, *contra.*—Courts take no judicial notice of matters affecting the titles to real estate.—17 A. & E. Enc. Law (2nd ed.), 894; Ib. 907 and note 3. Title to real estate can pass only by will or deed; so, if judicial notice is taken of the separation of the church and division of property, it was insufficient to pass the legal title to the property in dispute. Plaintiffs' evidence was in other respects insufficient, and no error was therefore committed in the ruling upon which they based the non-suit.

ANDERSON, J.—In the year 1833, John M. Lane and Fletcher M. Lane and their wives, of the county of Limestone, executed a deed to the lot in question to Samuel De Woody, *et al.*, as trustees of the "Methodist church situated in Athens." "Unto the said parties of the second part, Trustees as aforesaid and to their successors in office, in trust for the use and purposes hereinafter mentioned and declared. * * * * * That they shall erect a building thereon, or cause to be erected a house of worship, for the use of the Methodist Episcopal Church in the United States of America, according to the rules and discipline which from time to time may be agreed upon. * * * * * And in further trust and confidence, that they shall at all times forever hereafter permit such members and preachers of the said Methodist Episcopal Church to preach and expound God's Holy word therein."

The deed further provided that the property should be held by the parties of the second part, "And to their successors in office chosen and appointed according to the statute of the State of Alabama."

The register in chancery under section 4193 is clothed with the authority to appoint trustees in case of a vacancy, and the deed required the successors to be appointed under the statute.

The plaintiffs introduced proceedings had before the register, showing the appointment of the plaintiffs, and reciting that they been named by the proper authority as trustees of the Methodist Church, South, previous to said appointment. We think that, under the terms of

the deed and the statute, the trustees appointed by the register succeeded to the legal title; but, inasmuch as they are designated as trustees for the Methodist Episcopal Church, South, it might be contended that they cannot be the lawful successors to persons who were designated in the deed, as trustees of the Methodist Episcopal Church of America. This apparent variance relates only to the *cestui que trust* and which we think but one and the same.

We think the courts of the land can and will take judicial notice of the division of, perhaps, the largest and most powerful protestant church in the United States, of the territory over which jurisdiction was to be and has been exercised by the subdivisions, respectively, and of the articles of separation with reference to a territorial division of the common property. Not only is this a fact of historical notoriety, but the title to property once held before the separation has often been passed upon by the high courts of the country, and in reference to the rights and ownership of the respective wings of the church thereto. "The separation of the Methodist Church into two Methodist Episcopal Churches, the one north and the other south of a common boundary line, has been the subject of much discussion, in which the whole community, more or less, felt an interest, and was an event that connected itself with, and formed a part of the history of the country, of which no well informed man would be ignorant, and, from its notoriety, courts would take judicial notice of it without proof."— *Humphrey v. Burnside,* 4 Bush, Ky. 215; *Hart v. Bodley,* Har. 98; *Creighton v. Bilbro,* 1 Monroe, 138.

In passing upon the title to church property and in upholding the right of the trustees of the Methodist Episcopal Church, South, to sue for the church property, conveyed to the church before the division under a deed similar to the one before us, the court in *Humphrey's case, supra,* said, "The difference in name makes no difference in character or authority." This same court, in the case of *Humphrey v. Burnside,* 4 Bush, 226, said; "The original Methodist Episcopal Church has been *authoritatively* divided into two *Methodist Episco-*

[Malone, *et. al.*, Trustees v. Lacroix.]

*pal Churches, the one north and the other south of a common boundary* line, which, according to the plan of separation, limits the extent and jurisdiction of each; that each, within its own limits, is the lawful successor and representative of the original church, possessing all its jurisdiction, and entitled to its name; that neither has any more right to exceed those limits than the other; that the *Southern Church* retaining the same faith, doctrine and discipline, and assuming the same organization and name as the original church, is not only a Methodist Episcopal Church, but is in fact, to the South, *the* Methodist Episcopal Church *as* truly as the other church is so to the North, and is not the less so by the addition of the word South to designate its locality." See also *Gibson v. Armstrong,* 7 B. Monroe, 481.

The Supreme Court of Missouri, in the case of *Goode r. McPherson,* 51 Mo. 126, took judicial notice of the division and of the common boundary line, holding that it was "An event that connected itself with the history of the country, and from its notoriety, courts will take judicial notice of it without proof."

The Supreme Court of the United States, in the case of *Smith v. Swormstedt,* 21 U. S. 304-5-6-7-8 (16 Howard's Report), involving the property of a "Book Concern" owned and controlled by the church before the separation, said: "In the year 1844 the travelling preachers in General Conference assembled, for causes which it is not important particularly to refer to, agreed upon a plan for a division of the Methodist Episcopal Church in case the annual conferences in the slave-holding States should deem it necessary; and to the erection of two separate and distinct ecclesiastical organizations. And, according to this plan, it was agreed that all the societies, stations, and conferences adhering to the church south, by a majority of their respective members, should remain under the pastoral care of that church; and all of these several bodies adhering, by a majority of its members, to the church north, should remain under the pastoral care of that church; and, further, that the ministers, local and travelling, should,

[Malone, *et. al.*, Trustees v. Lacroix.]

as they might prefer,· attach themselves, without blame, to the church north or south. It was also agreed that the common property of the church, including this Book Concern, that belonged specially to the body of travelling preachers, should, in case the separation took place, be divided between the two churches in proportion to the number of travelling preachers falling within the respective divisions. This was in 1844. In the following year the southern annual conferences met in convention, in pursuance to the plan of separation, and determined upon a division, and resolved that the annual conferences should be constituted into a separate ecclesiastical connection, and based upon the discipline of the Methodist Episcopal Church, comprehending the doctrines and entire moral, ecclesiastical, and economical rules and regulations of said discipline, except only so far as verbal alterations might be necessary; and to be known by the name of the Methodist Episcopal Church, South."

"The division of the church, as originally constituted, thus became complete; and from this time two separate and distinct organizations have taken the place of the one previously existing."

"The Methodist Episcopal Church having been thus divided, with the authority and according to the plan of the General Conference, it is claimed on the part of those who represent the travelling preachers in the south, that they are entitled to their share of the capital stock and profits of the Book Concern, and that the withholding of it from them is a violation of the fundamental law prescribed by the founders, and consequently of the trust upon which it was placed in the hands of the defendants."

"The principal answer set up to this claim is, that, according to the original constitution and appropriation of the fund, the beneficiaries must be travelling preachers, or the widows and orphans of travelling preachers, in connection with the Methodist Episcopal Church, as organized and established in the United States at the time of the foundation of the fund; and that, as the complainants, and those they represent, are not shown to be travelling preachers in that connection, but travel-

ling preachers in connection with a different ecclesiastical organization, they have forfeited their right, and are no longer within the description of its beneficiaries."

"This argument, we apprehend, if it proves anything, proves too much; for if sound, the necessary consequence is that the beneficiaries connected with the church north, as well as south, have forfeited their right to the fund. It can no more be affirmed, either in point of fact or of law, that they are travelling preachers in connection with the Methodist Church as originally constituted, since the division, than of those in connection with the church south. Their organization covers but about half of the territory embraced within that of the former church; and includes within it but a little over two-thirds of the travelling preachers. Their general conference is not the general conference of the old church, nor does it represent the interest or possess, territorially, the authority of the same; nor are they the body under whose care the fund was placed by its founders. It may be admitted that, within the restricted limits, the organization and authority are the same as the former church. But the same is equally true in respect to the organization of the church south."

. "It is insisted, however, that the General Conference of 1844 possessed no power to divide the Methodist Episcopal Church as then organized, or to consent to such division; and hence, that the organization of the church south was without authority, and the travelling preachers within it separated from an ecclesiastical connection which is essential to enable them to participate as beneficiaries."

"But we do not agree that this division was made without the proper authority. On the contrary, we entertain no doubt but that the General Conference of 1844 was competent to make it: and that each division of the church, under the separate organization, is just as legitimate, and can claim as high a sanction, ecclesiastical and temporal, as the Methodist Episcopal Church first founded in the United States. The same authority which founded that church in 1784 has divided it, and established two separate and independent organizations occupying the place of the old one."

[Malone, *et. al.*, Trustees v. Lacroix.]

"In 1784, when this church was first established, and down till 1808, the General Conference was composed of all the travelling preachers in that connection. This body of preachers founded it by organizing its government, ecclesiastical and temporal, established its doctrines and discipline, appointed its superintendents or bishops, its ministers and preachers, and other subordinate authorities to administer its polity, and promulgate its doctrines and teachings throughout the land."

"It cannot, therefore, be denied, indeed, it has scarcely been denied that this body, while composed of all the travelling preachers, possesses the power to divide it and authorize the organization and establishment of the two separate, independent churches. The power must necessarily be regarded as inherent and in the General Conference. As they might have constructed two ecclesiastical organizations over the territory of the United States originally, if deemed expedient, in the place of one, so they might, at any subsequent period, the power remaining unchanged."

"The division of the Methodist Episcopal Church having thus taken place, in pursuance of the proper authority, it carried with it, as a matter of law, a division of the common property belonging to the ecclesiastical organization, and especially of the property in this Book Concern, which belonged to the travelling preachers. It would be strange if it could be otherwise, as it respects the Book Concern, inasmuch as the division of the association was affected under the authority of a body of preachers who were themselves the proprietors and founders of the fund."

It, therefore, stands to reason, and we must conclude as a matter of law, that the plaintiffs, when appointed trustees of the Methodist Episcopal Church, South, by the register in chancery, became the legal successors of the original trustees and were vested with the title of their predecessors, and that the trial court erred in excluding the evidence of their appointment.

It is true that the plaintiffs, in introducing evidence of title, failed to identify the lot in question as a part of the quarter section described in the patent from the gov-

ernment, but counsel stated at the start that they expected to prove this fact, and we do not think a failure to do so before the exclusion of the evidence and the taking of the non-suit, relieves the trial court of error in excluding evidence of plaintiffs' title. With the evidence already introduced excluded, the evidence of identity could avail nothing to the plaintiffs.—*Hubbard v. Baker,* 48 Ala. 491; *Erwin Meyer & Co. v. Crowell,* 17 Ala. 227; *McDowell v. Wood,* 118 Ala. 589.

The trial court committed no error in excluding deeds from Van Hoose to LaCroix or from LaCroix to Van Hoose. The plaintiff in ejectment must rely upon the strength of his own title, not the weakness of defendant's title, and these deeds were certainly not admissible to help make a *prima facie* case for the plaintiffs.

The judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

MCCLELLAN, C. J., TYSON, DOWDELL, SIMPSON and DENSON, J. J., concurring.