## GAINES *vs.* HARVIN.

19 491
118 22

1. When the court below charges the jury that if they believe the evidence they must find for the plaintiff, the defendant seeking to revise the charge must either show that there was *conflicting* evidence before the jury, and that therefore the charge of the court invaded their province, or he must set out *all the evidence* in the record, that the Appellate Court may be able to determine whether the charge is sustained or authorized by it.

2. The statute conferring upon the registers in chancery power to appoint trustees in certain cases, (Clay's Digest, 350, § 33, and Pamphlet Acts of 1845-6, p. 16,) is not unconstitutional in vesting *quasi* judicial powers in officers who are not elected, commissioned and qualified as judges are required to be by the constitution.

3. *It seems*, that the proceedings of a register in chancery in the appointment of a trustee cannot be collaterally impeached.

4. Detinue may be maintained for the recovery of a slave who at the commencement of the suit was in the possession of a third person on hire, it not being shown that the hiring is of such a nature as would prevent the defendant from resuming the possession at pleasure.

ERROR to the Circuit Court of Marengo. Tried before the Hon. Geo. D. Shortridge.

A. R. MANNING, for plaintiff in error:

1. All the title of the plaintiff below was derived from the order or decree of a register, the mere clerk of a Chancery Court, and the statutes under which the register acted are void.

The people of Alabama, in forming their government, took great pains to keep the legislative, executive and judicial functions separate. Upon this point the constitution is remarkably emphatic. The mere declaration of this principle is made to constitute an entire article in two sections, of that instrument. (See Art. II.) Indeed, according to our American ideas, this distribution of the powers of Government is necessary to the prevention of tyranny. Judicial powers are vested in the courts only, and their independence of the other departments is intended to be maintained by a certain prescribed mode of electing the judges, by putting their offices during the terms mentioned in the constitution, beyond the reach of the General Assembly and

Governor, and by other provisions designed to have the same effect.—See Art. V, §§ 1, 12, 13 and 14. Justices of the peace are expressly provided for by section 10, of this article. None of these provisions apply to a register, and he is not in any sense a judge within the meaning of the constitution. His action upon matters referred to him by the chancellor, does not show him to be so, for that action has no effect, until, upon his report thereof, it is adopted and confirmed by the chancellor, and so becomes his.

But the statutes which undertake to authorize registers to substitute one trustee for another, to divest one citizen and devolve upon another the legal title to property, (all that title which alone the common law courts of the land can recognize,) deal with a register as if he were a judge, and do not require any confirmation of his act, and an appeal or writ of error for the revision of his decree would bring the cause from him directly into this court. The Legislature had no more power to confer upon him this high attribute of a court, and place him in such relations to the judiciary of the State, than it has to clothe with other judicial powers any minion of its own whom it may appoint, and pay, and remove at will. The violation of the constitution is the same in kind, though different in degree, as would be the creation by the General Assembly of a court of Star-Chamber or High Commission.

Again: the register not being a judge, or having a judicial capacity by the constitution, if he can be invested with it by statute, must put it on in the manner the statute prescribes, else he is no judge, and proceedings before him are *coram non judice.* In this case he did not give the notice prescribed, of his intended judicial action. And his precipitate appointment of a new trustee upon the very day of the application by one or two only of the several beneficiaries mentioned in the deed, gave no more title than would the act of any other unauthorized person.

2. The defendant below had acquired title to the slave sued for, by the statute of limitations. For the title of the trustee, Law, devolved on his administrator in 1835, to whom a right of action accrued about that time; (Mauldin, Montague & Co. v. Armistead, Adm'r., 14 Ala. 702) and the statute did not afterwards cease to run.—Ang. on Lim. (2d ed.) 205-6, 518 *et seq.*; Howell v. Hair, 15 Ala. 195; Lowe's Adm'r. v. Jones, ib. 545;

Mercer v. Selden, 1 How. U. S. R. 545; Demarest v. Wynkoop, 3 J. C. R. 129.

3. The slaves, when suit was brought, were in the hands of persons to whom they had been hired, and who, according to the decisions of this court, were purchasers of them during the term of the hiring. And detinue can no more be sustained against the person who let them to hire, after he had parted with the possession of them, than against one who had sold his entire interest in the property.—See 2 Stark. on Ev. 281, (Detinue.) "The gist of the action of detinue is the wrongful detainer at the date of the writ, and not the original taking of the chattel. It is generally, therefore, incumbent on the plaintiff in this action to show an actual possession by defendant, or a general controlling power over the chattel at the date of the writ."—Charles v. Elliott, 4 Dev. & Bat. 468.

It is upon the same principle that detinue cannot be maintained after the destruction or death of the chattel sued for.—Lindsey v. Perry, 1 Ala. 203.

W. M. Broooks, *contra :*

1. The register had the power to appoint the trustee, (Clay's Dig. 350, §§ 32 and 33,) and the power in this case was properly and regularly exercised.—See Pamphlet Acts of January, 1846, p. 16.

2. But if the appointment was irregular, it cannot be collaterally impeached.—Lewis v. Intendant of Gainesville, 7 Ala. 85; Davis v. Cox, 17 ib. 714.

3. It is to be presumed that the charge of the court was correct, unless the contrary is shown by the party complaining. All the evidence is not set out in the bill of exceptions, and this court cannot therefore determine whether the charge of the court was correct or not.

4. The property held in trust does not pass to the representatives of the trustee.—Moses v. Murgatroyd, 1 Johns. Chan. R. 119, 473. In this case the property was never in the possession of the trustee or his administrator. Can the administrator in such case claim title?

5. The law authorizing the register to appoint a trustee is constitutional. It is no invasion or exercise of judicial power; applies simply to the remedy for the assertion of vested rights. Heirs of Holman et al. v. Bank of Norfolk, 12 Ala. 416-17.

Again : it may be held that the register is an 'inferior court.' If this be so, his acts are valid, although he may not have been elected by the Legislature.

CHILTON, J.—This was an action of detinue to recover a negro woman slave called Sylva, by Harvin, the defendant in error, against Wm. M. Byrd and Wm. Burks, who, by consent, were discharged, and the claimant of the slave, who is the plaintiff in error, admitted to defend. The plaintiff below had a verdict, on which judgment was rendered in his favor. Upon the trial a bill of exceptions was sealed, from which it appears that the plaintiff below introduced as evidence a deed executed by Robert Sanders on the 12th day of January, 1832, to Gabriel W. Law, conveying to him the slave in controversy, with others, in trust for the daughter of said grantor, Sarah A. Kendrick, widow of the late Thomas Kendrick, to have and to hold for her use during the term of her natural life, without being subject to her disposal or the disposal of any future husband she might marry ; the trustee to permit her to enjoy said property, but the same not to be subject to her debts, and in the event of her death, the trustee named was to be seized of the property for the use and benefit of the grantor's son and daughters who are named in the deed, share and share alike, to them and their heirs forever. The deed makes provisions of a similar character for the grantor's other children and some grand children, but for the sake of simplifying the matter we omit them. This deed was proved to have been duly executed in South Carolina, where the parties resided in 1832.

In the latter part of 1835, or first of the year 1836, Sarah A. Kendrick died, the trustee, Law, having previously departed this life. James Law, Sr., was appointed the administrator of the latter, and he having been removed, a successor to such administration was acting in that capacity, when the following proceedings were had before the register in chancery of the 4th district, namely : A petition addressed to the chancellor was exhibited by Wm. W. & Margaret J. Harvin, his wife, setting forth the execution of the above deed, a copy of which accompanies it ; that the slaves described were brought, in 1834, by Mrs. Kendrick, to Marengo county, and while so possessed of the slaves she departed this life ; that the trustee also became a

Gaines v. Harvin.

resident of said county and afterwards died; that, petitioner, Margaret, is the only surviving child of said Sarah A., and that in 1842 she was lawfully married to said Wm. W. Harvin, and that they are the only persons interested in the estate of said Sarah. Wherefore they pray the appointment of another trustee in place of said Law, and suggest Wm. W., one of the petitioners, as a suitable person. The petition bears date the 27th October, 1846.

On the same day the register proceeded *ex parte*, to appoint said Harvin trustee to execute said deed so far as regards the property given in trust for Mrs. Kendrick, the order reciting that this portion of the deed alone remained unexecuted. The defendant objected to the reading of the transcript of this proceeding in evidence to the jury, first, because the register had no authority to make such appointment, and secondly, because no notice was given by the register of his intended proceeding. The objection was overruled, and the petition and order of appointment read.

The authority of the register and the regularity of his proceeding, are the only questions for our revision. Indeed, we may well confine our inquiry to the first branch of this proposition, namely, the jurisdiction of the register; for, if he may rightfully make the appointment, we apprehend it cannot be collaterally set aside.

We say this is the only matter proper for inquiry. Another question is attempted to be educed from the record, namely, the sufficiency of the proof to entitle the plaintiff below to a recovery. But the bill of exceptions raises no question of the kind. The circuit judge charged, it is true, that under the proof in the cause, the plaintiff was entitled to a verdict, but it is not shown that there was a conflict in the proof which would have rendered such a charge improper, or that the proof was of such character as would render the charge obnoxious to the objection that it was an invasion of the province of the jury. Presuming in favor of the correctness of the judgment and proceedings, we must intend that there was no such conflicting testimony. It would seem almost a truism, that to enable the revising court to pronounce upon the legality of a charge based upon *all the evidence* in a cause, and pronouncing what the court conceived to be the judgment of the law as predicated upon those

facts, the revising court must be put in possession of such facts, else there is no data upon which to found an opinion. In this case the bill of exceptions does not purport to set out all the testimony, nor does the charge purport to have been based alone upon that which is set out. We must, then, in conformity to our established rule, presume that the evidence would sustain the charge if it had been set out *in extenso.*

We have hitherto decided that where a party seeks to revise a charge like this, he must show one of two things, first, that the evidence was conflicting, and that therefore the court had no authority to give such charge, as its effect in such case would be to withdraw from the jury the consideration of the conflicting proof; or, second, the record must set out *all the proof,* so that this court may be able to determine whether the charge was correct as predicated upon it, either as being sustained by it on the ground of its sufficiency, or as authorized by it by reason of there being no conflict or dispute in regard to it. The record before us does neither, and it is consequently impossible for us to determine whether the court invaded the province of the jury in deciding upon the effect of doubtful or conflicting proof, or whether, if it was a case proper for such action on the part of the court, the decision was sustained by the proof. We therefore dismiss this part of the case, and turn to the consideration of the register's authority under our statute to appoint a trustee.

By the act of 1843, (Clay's Dig. 350, § 33,) it is provided, that "when any trustee shall die, on the application of any person interested in the trust estate to the register in chancery of the proper chancery district, it shall be his duty to appoint one or more trustees in the stead of such deceased trustee, as in case of the resignation of trustees: *Provided,* that the notice prescribed by law shall in all cases be given." The previous statute of 1829, (Clay's Dig. 581,) required a trustee who would resign his trust to give to all the persons concerned at least thirty days previous notice, but no notice is prescribed to be given in order to fill the vacancy. The act merely declares that "upon the resignation or removal of any trustee as provided for by this act, the Circuit Court of the proper county shall have full power, &c., to appoint another trustee or trustees in the place of the trustee so removed or resigning." By the fifth section of the same act, it is provided, that for the prosecution or defence of any suit in

any of the courts of this State, the court before whom such suit may be pending, may, on motion, appoint a trustee or trustees for the purpose of prosecuting or defending the same, in all cases where the same may be necessary.

By the act of 13th January, 1846, (Pamph. Acts, '45-6, p. 16,) it was enacted that when the trustee died, resigned, or failed or refused to act, or removed beyond the limits of the State, on the application of any person or persons interested in the estate to the register in chancery of the proper chancery district, it shall be his duty to appoint one or more trustees in the stead of such trustee : *Provided*, that the register to whom such application shall be made, shall cause twenty days notice in writing to be given to all persons interested in such trust estate, and in case of the non-residence of any or all of the parties interested in such trust estate, such register shall cause publication to be made in some newspaper printed in this State, for sixty days, stating the time and place when and where such application will be made and determined.

Mr. Manning has argued very ably before us that this law, vesting in the register the power to appoint trustees, violates the constitution of the State ; that the power to divest one person of title and to invest another with it, is a judicial power, to be exercised by the judicial officers of the State elected in accordance with the provisions of the constitution, and that to hold that the Legislature may devolve this power upon officers whose tenure of office is not provided for by the constitution, but who may be created by and amenable to the Legislature, would open the door for the Legislature to claim and exercise *all* the powers of the government, which by the constitution are divided into three distinct departments, legislative, executive and judicial, and each confided to a separate body of magistracy. This argument would be conclusive, had the constitution contained a clause restricting the Legislature in providing remedies for existing rights, to the courts specifically named in the constitution. Such, however, is not the case. The first section of the fifth article of the constitution declares that " the judicial power of this State shall be vested in one Supreme Court, Circuit Courts to be held in each county in the State, and such inferior courts of law and equity, to consist of not more than five members, as the General Assembly may from time to time erect, ordain and es-

tablish." The mode of the appointment of the judges of the several courts and tenure of their offices is also pointed out.

We do not understand by this provision in the constitution, that it was the intention of its framers to deny to the Legislature the power to confide to ministerial officers who do not constitute a part of the judiciary, properly so called, many duties involving inquiries in their nature judicial. The practice of this, as of all other governments, having their executive, judicial and legislative departments separate and distinct, very clearly shows that in the administration of the laws, inquiries partaking of the nature of judicial investigations are confided to persons other than judges whose acts have never been questioned on constitutional questions. Auditors and commissioners appointed in certain cases and for specific but temporary purposes, commissioners of roads and revenue, or for the allotment of dower, the sheriff in executing writs of inquiry in certain cases, so also the masters in chancery, the commissioner of patents of the United States, and commissioners under the late act of Congress in regard to proceedings for the extradition of fugitive slaves, all perform duties in their nature judicial, but we have seen no case holding their acts to be unconstitutional. To hold all such acts as are performed by inferior officers void, because such officers have not been commissioned or qualified as the constitution requires judges to be elected and qualified, would be to unsettle the titles of the country, and to introduce a scene of confusion which would greatly disturb the public repose. Before we could be justified in producing such a result, by declaring such statutes void, we must be enabled to see in them a plain and palpable violation of the fundamental law. This we cannot discover in the statutes under consideration. They but furnish the cestuis que trust with the means for the trial of their rights by substituting a party to represent them in lieu of one who is dead, removed, or the like. The action of the register in chancery in the appointment of such trustee is not definitive of the rights of third parties disconnected with the trust; the newly appointed trustee can have no greater right in respect of the trust estate than the original trustee possessed. The appointment then is a matter in which the cestuis que trust and the trustee are alone concerned, and is not a judicial decision upon the conflicting title of adverse claimants to the property.

As to the fact that no notice was given, were we to. concede that the question could be raised by a stranger to the trust, and that the action of the register could be collaterally. called in question, still we are of opinion, that assuming as true what the order of the register recites and what the petition avers, that the petitioners are the only persons interested in the trust estate, so far as the trust remained unexecuted, there was really no person to whom notice was required to be given. All persons interested in the trust estate, (by which we understand the *cestuis que trusts*, or their representatives,) were before the register, which dispensed with the necessity of notice.

We have, after a careful examination, been unable to perceive any error in this record. · The objection. that detinue cannot be maintained because the property at the time the action was brought was in the possession of a third party on hire, cannot be sustained. Without deciding what effect this would have, did the record show that the hiring was of such nature as would prevent the defendant from resuming the possession of the property at pleasure, it is quite clear that it is no bar to the action merely to show, as is here stated, that the property was in possession of another on hire ; *non constat*, it may have been for an hour for the performance of some temporary service, or the hiring may have been determinable at the pleasure of the defendant.

-Let the judgment be affirmed.