(98 South. 272)

## ROBERTSON v. BUSINESS BOOSTERS' COUNTRY CLUB. (3 Div. 621.)

(Supreme Court of Alabama. Nov. 15, 1923. Rehearing Denied Dec. 20, 1923.)

1. **Assumpsit, action of** ⬌1—**Trover and conversion** ⬌13—**Court may resort to principles of equity.**

In an action of general assumpsit or trover, the court may administer justice according to the principles of equity.

2. **Mines and minerals** ⬌104 — **Corporation president, depositing funds in his own name as trustee, held not guilty of conversion.**

A president of a corporation organized to promote the drilling of an oil well, who received checks for stock sold, payable to himself as president, on his personal assurance that the funds realized would be expended as contemplated, if enough subscriptions were received to warrant drilling, held not to have rendered himself liable for conversion by depositing the checks in a bank to his own credit as trustee, rather than in the name of the corporation.

3. **Mines and minerals** ⬌104—**President of corporation held not personally liable for funds expended as managing officer.**

The president of a corporation organized to promote the drilling of an oil well, who has received corporate funds on the personal assurance that they would be so expended, and deposited same in a bank to his own credit as trustee, and who with other directors has located a well on a lease executed to him personally, but of which the corporation was the equitable owner, held not liable as trustee for funds properly expended by him as managing officer for the contemplated purpose with the approval or ratification of the other directors.

4. **Mines and minerals** ⬌104—**President of corporation held liable for conversion of funds after ouster from authority.**

A president of a corporation organized to promote the drilling of an oil well, who, after receiving stock subscriptions on personal assurance that funds realized would be so expended, deposited them to his own credit as trustee, expended part of them with the approval of the other directors on a well situated on a leasehold held in his name, but who after an ouster from authority repudiated the rights of the corporation and continued with the same drilling company under a new contract to develop the same well under a new organization using the same funds, held liable for conversion of such funds, though the new organization may have consisted of a majority of the stockholders of the old.

5. **Licenses** ⬌18½, **New, vol. 12A Key-No. Series—Sales of stock held not in violation of Blue Sky Law.**

Sales of stock by a corporation organized to promote the drilling of an oil well, through personal solicitation by one hired by the president for that purpose, held not a violation of the Blue Sky Law, in the absence of any showing of use of advertisements, circulars, prospectus, or other form of public offering.

⬌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action in assumpsit and trover by the Business Boosters' Country Club against W. T. Robertson. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Horace Stringfellow, of Montgomery, for appellant.

Assumpsit and trover are equitable actions; and the law court is competent to administer justice between the parties according to the rules of equity. McGowin v. Young, 2 Stew. & P. 160; Ryan v. Young, 147 Ala. 664, 41 South. 954. Defendant had authority under the law to deposit the funds in his own name as trustee. Chancellor v. Chancellor, 177 Ala. 46, 58 South. 423, 45 L. R. A. (N. S.) 1, Ann. Cas. 1915C. 47; Jessie French Co. v. Johnston, 142 Ala. 421, 37 South. 924. Appellant, in applying the fund as he did, was discharging his obligation to appellee, and he cannot be held liable therefor. Brown v. Walter, 58 Ala. 310; Traweek v. Hagler, 199 Ala. 668, 75 South. 152.

W. P. McGaugh and Hill, Hill, Whiting & Thomas, all of Montgomery, for appellee.

Credit for expenditures made in drilling the well could not be had under the plea of payment. 30 Cyc. 1187; Smith v. Pitts, 167 Ala. 468, 52 South. 402; Franklin v. McGuire, 10 Ala. 557. The finding of the trial court should not be reversed unless it plainly appears it is not sustained by the legal evidence. Union Mut. Aid Ass'n v. Carroway, 201 Ala. 415, 78 South. 792; Faulkner v. Fowler, 201 Ala. 685, 79 South. 257.

SAYRE, J. Plaintiff, appellee, declared on the common counts and in trover, thereby seeking to charge defendant with the full amount of funds, or bank checks, received by him while president of plaintiff corporation and expended under his direction and authority in the drilling of an oil well, or what the parties in interest hoped might prove to be an oil well. Plaintiff appears to have had judgment for the full amount of the checks received by defendant, plus interest to the date of judgment, less $400, the checks for which proved worthless. Trial was had before the judge without a jury, and the assignments of error go to the general merits of plaintiff's case.

[1] In both forms of action, general assumpsit (Traweck v. Hagler, 199 Ala. 666, 75 South. 152) and trover (McGowin v. Young, 2 Stew. 276), it is competent for the law court to administer justice according to the principles of equity.

It is not denied that defendant expended the funds received by him in the business of drilling a well as in the beginning of the enterprise all parties concerned intended they should be expended; but during the progress of the work differences arose between plaintiff corporation and defendant, who, until then, was president and general managing officer of the corporation, and these differences eventuated in the suit under consideration. Without regard to the causes of these differences, defendant's contention, sufficient to dispose of the entire controversy, if sustained, is that the funds in dispute came into his hands as a trustee for the individuals from whom they came, not as an officer of plaintiff corporation, and therefore that he is not accountable to the plaintiff for them; but our judgment is that this contention cannot be sustained.

[2] The facts are that plaintiff corporation had been organized with an authorized capital stock of $50,000 for the purpose of maintaining and operating an amusement and recreation park, a swimming pool, and some other such things, and "to develop the natural resources of Alabama, and to acquire by purchase, deed, or gift, or assignment, interest in mineral rights, timber lands, and oil and gas rights and leases." Then, less than $5,000 of the stock having been subscribed, and the affairs of the corporation languishing, defendant was induced to buy stock and become president of the corporation, after which defendant and other shareholders solicited subscriptions to stock, for which checks were given, payable to "W. T. Robertson, president," with the express understanding and agreement that the fund thus raised, the fund in controversy, was to be applied solely to the drilling of an experimental oil well, for which use and application of the fund the subscribers accepted defendant's personal assurance, but it was also understood and agreed that, if not enough money was raised "to begin drilling," the checks were to be returned to the subscribers. The checks, so given, were by defendant deposited in bank to his credit as "trustee" on December 8, 1921. We think it is to be inferred, perhaps, that the judgment against defendant for the full amount thus made available to his order proceeded upon the theory that by his deposit of the checks to his credit as "trustee" defendant was guilty of a wrongful conversion, which, without regard to its subsequent application, rendered defendant personally liable to plaintiff for the full amount of the deposit. But the trial court, if it proceeded upon the stated theory, was in error.

Defendant was president and in fact managing officer of plaintiff corporation. From the undisputed evidence no inference can be drawn save that the checks were given for stock in plaintiff corporation, and defendant's testimony is that they were given for the purpose of financing the drilling of an oil well under plaintiff's charter. These facts constituted the fund realized from the checks the property of plaintiff, and rendered defendant accountable to plaintiff for their

use and application under its charter powers —certainly so after it had been agreed on all hands, as appears to have been the case, that the amount of the checks warranted the beginning of operations, and for that purpose they were converted into cash—that is, deposited to defendant's credit—and operations were set on foot and for some time prosecuted in complete agreement with the purpose and intent of the subscribers and the charter under which plaintiff was organized. On the facts stated, the subscribers must be held to have contemplated that defendant should manage and use the fund as the property of the corporation; but our judgment is that his deposit of the checks to his credit as "trustee," without more, was within his power as president and managing officer, and evidenced no breach of trust. True, defendant's testimony shows that "they wanted me to deposit it in the name of the Boosters' Club" and that he refused to do so. "They," we infer, meant some of the subscribers, for it affirmatively appears that until January 4, 1922, defendant's management of the affairs of the corporation had at least the tacit approval of the directors, the governing body of the corporation, tantamount to a ratification, if approval was lacking at the time of the deposit. There was, therefore, during that time and on the facts stated, no illegal assumption of authority on the part of defendant, no misuser of the fund, no illegal conversion.

[3] But the contract entered into between plaintiff corporation and the drilling contractors was for "a well in search of oil or gas at a location to be selected by the party of the first part on some of the leases now owned and held by party of the first part," and such was the understanding and intent of the subscribers to the stock who made up the fund so to be used. The well was located by defendant and a majority of the directors, and during the period indicated above operations proceeded there with the apparent approval of all concerned. Subsequently, however, it was discovered that the lease of the premises on which the well had been located had been executed to defendant, and it may be that this fact sufficed to turn the judgment of the trial court to the conclusion that defendant was personally liable for the entire fund. Defendant was chargeable as matter of law with notice of the title to the leasehold (14a C. J. 100), but so were the other directors, who bound the corporation by their acquiescence in what he did (Id.). The equitable title was in the corporation, defendant acted in good faith, and our judgment is that in equity and good conscience he should not be required to replace the amounts expended by him prior to January 4, 1922.

[4] However, on the facts now appearing defendant was answerable for that part of the fund expended by him subsequent to January 4, 1922; for on that date the corporation, acting through its directors, revoked his authority as managing officer, as it had a right to do, notwithstanding his personal assurance as to the expenditure of the fund in question, since, as we have found, it was the property of the plaintiff corporation, and subject to corporate disposal. Nor can the fact that, after that date, defendant continued to direct the drilling of the same well and to pay for it out of the fund subscribed by the stockholders, avail to relieve him of responsibility; for thereafter, moved, no doubt, by the new turn taken by the relations between himself and the plaintiff corporation, he, along with some—it may be a majority—of the subscribing stockholders, organized a new corporation, in the name of which he entered into a new contract with the drilling contractors, identical in effect with the original contract, and by and through it proceeded with the operation, paying for the same out of the fund in question, and wholly denying and repudiating the title, interest, and authority of plaintiff. Nor can the contention that the balance of the fund was expended, as plaintiff, under its contract with the drilling contractors, was bound to expend the same or a like amount, be sustained, for the contractors joined defendant in repudiating the rights of plaintiff, and, whether so or not, all question as to the further prosecution of the operation lay between plaintiff, acting by and through its directors, and the contractors, and defendant was then without authority to bind plaintiff by his acts.

[5] We notice the suggestion in appellant's brief that the sale of stock in the plaintiff corporation was in violation of the "Blue Sky Law" (Acts 1920, p. 60), and hence that plaintiff has no right to complain of defendant's use of the fund so realized. Without conceding the soundness of this suggestion in any part, the court is of opinion that upon the record here, which fails to show sales by advertisement, circular, prospectus, or any other form of public offering, the sales of stock in plaintiff corporation, which, for aught appearing, may have been made exclusively by personal solicitation or private negotiation, were not made in violation of the act. Raynard v. State (Ala. App.) 96 South. 723.[1] Plaintiff employed one Johnson to sell its stock, and he undertook to sell it—did sell a good many shares—by personal solicitation. This, in the judgment of the court, did not constitute a violation of the statute.

It results that the judgment must be reversed, and the cause remanded for another trial in agreement with this opinion.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.

[1] 19 Ala. App. 281.