(103 So. 576)

ROBERTSON v. BUSINESS BOOSTERS' COUNTRY CLUB. (3 Div. 696.)

(Supreme Court of Alabama. Jan. 22, 1925. Rehearing Denied April 16, 1925.)

1. Mines and minerals ⬤104 — Corporation president held not liable for funds expended in good faith for contemplated purpose, before revocation of his authority.

President of corporation, organized to bore test well for oil and gas, held not liable for expenditure before revocation of his authority of funds received from sale of completed stock subscriptions, which he placed in his name as trustee, where the funds were expended in good faith and for the contemplated purposes.

2. Licenses ⬤18½, New, vol. 12A Key-No. Series—Public offerings of stock in newspaper without permit, followed by personal solicitation, held illegal.

Public offerings in newspaper without permit, of shares of stock, followed by personal solicitation, held illegal, under the Blue Sky Law, § 3, without a showing that the actual sales were influenced by such advertisements.

3. Licenses ⬤39—Illegality of sale of stock by corporation held no defense in suit against corporate officer for accounting, or for conversion of funds received by him for corporation from stock sold.

Illegality of sale of stock by corporation, under Blue Sky Law, § 3, held no defense in suit against corporate officer for accounting, or for conversion of funds received by him for corporation from stock sold under contracts fully executed.

4. Evidence ⬤589—Court properly held defendant officer bound by unauthorized expenditures of corporate funds, as testified by him; his testimony being only evidence on subject.

Court properly held defendant officer bound by unauthorized expenditures of corporate funds, as testified by him; his testimony being only evidence on subject.

5. Mines and minerals ⬤104—Unauthorized expenditures of officer after revocation of his authority included items incurred before revocation but paid thereafter.

Unauthorized expenditures of officer of corporation, authorized to drill oil wells, after revocation of his authority, included items incurred before revocation but paid thereafter.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action by the Business Boosters' Country Club against W. T. Robertson. Judgment for plaintiff, and defendant appeals. Corrected and affirmed.

See, also, 210 Ala. 460, 98 So. 272.

Horace Stringfellow and Steiner, Crum & Weil, all of Montgomery, for appellant.

An agent cannot be compelled to account to his principal for funds received in the course of an illegal transaction. 31 Cyc. 1783; Mechem on Agcy. (2d Ed.) § 1332; Ellis v. Batson, 177 Ala. 316, 58 So. 193. Validity cannot be injected into an illegal contract by way of estoppel. Boyett v. Standard C. & O. Co., 146 Ala. 554, 41 So. 756; Turner v. Bank, 126 Ala. 403, 28 So. 469. The defendant expended the funds as it was his duty to do, and he is not liable therefor. Brown v. Walter, 58 Ala. 310. There was error in computation by the trial court. Central of Ga. v. Teasley, 187 Ala. 610, 65 So. 981; 1 Cook on Corp. § 167.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee.

The judgment of the trial court will be accorded the effect of a jury verdict. Faulkner v. Fowler, 201 Ala. 685, 79 So. 257. The burden of showing proper disposition of the funds was upon the defendant. 1 Mechem on Agcy. 980; 2 C. J. 930; Rose v. Shaw, 144 La. 571, 80 So. 727. There was no violation of the Blue Sky Law. Acts 1919, p. 950; Acts 1920, p. 60; Robertson v. Boosters' Club,

---

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[3] Ante, p. 159.

210 Ala. 460, 98 So. 272; Raynard v. State, 19 Ala. App. 281, 96 So. 723. When the funds were actually delivered to the agent, the principal may recover, although received by the agent as the fruit of an illegal transaction. 2 C. J. 746; Ingersoll v. Campbell, 46 Ala. 282; Pride v. Comm. Union Co., 9 Ala. App. 348, 63 So. 803; 21 R. C. L. 831; Thomas v. Little, 209 Ala. 590, 96 So. 896; Gibson v. Knard, 96 Ala. 419, 11 So. 482; Planters' Bank v. Union Bank, 83 U. S. (16 Wall.) 483, 21 L. Ed. 473; Sales Davis Co. v. Henderson-Boyd Co., 193 Ala. 173, 69 So. 527.

BOULDIN, J. [1] This is the second appeal in the cause. For former decision, see Robertson v. Business Boosters' Country Club, 210 Ala. 460, 98 So. 272.

In effect it was held that the fund alleged to have been converted, being paid in on subscriptions for stock in plaintiff corporation for the purpose of boring a test well for oil and gas in Montgomery county, was the property of the plaintiff; but, the funds having been applied in good faith to the purposes intended, the defendant should not, in an action equitable in character, be held to account for so much of the fund as was expended prior to January 4, 1922, when his authority as managing officer was revoked by plaintiff.

On the second trial both parties introduced some further evidence. Appellee insists that under the evidence appellant was liable for a conversion of the entire fund, and cannot complain of a judgment for any amount less than the whole fund. The additional testimony relied upon was a resolution of December 9, 1921, authorizing the deposit of the funds in the name of Robertson and Mooneyham, trustees, and a published statement by defendant, explaining his position and containing the following:

"The directors of the Boosters' Club wanted me to deposit this money to the credit of the Business Boosters' Country Club, which I refused to do, inasmuch as a suit had been filed against the club and several claims had been presented for payment, which debts were contracted prior to my being made president."

It sufficiently appears that defendant had deposited the fund in the name of W. T. Robertson, trustee, prior to the resolution of December 9th. The parties had the purpose to keep this fund separate as a trust fund for the uses named, and the resolution itself evinces a purpose to avoid a deposit of same to the credit of the plaintiff or Mooneyham, as treasurer. It further appears defendant was between fires, his pledged obligations to subscribing stockholders, and his obligations growing out of his relation to the corporate body. On the whole evidence we adhere to the view that defendant was acting in good faith, and that the court below properly followed the former decision in holding defendant not liable for funds expended prior to January 4, 1922.

[2] Appellant insists that appellee, under the present record, was not entitled to a recovery of any sum, because the fund arose from sales of stock in violation of the Blue Sky Law (Acts 1920, p. 60). Dealing with this question in the former opinion, it was said:

"Without conceding the soundness of this suggestion in any part, the court is of opinion that, upon the record here, which fails to show sales by advertisement, circular, prospectus, or any other form of public offering, the sales of stock in 'plaintiff corporation, which, for aught appearing, may have been made exclusively by personal solicitation or private negotiation, were not made in violation of the act. Raynard v. State (Ala. App.) 96 So. 723."

On the second trial defendant presented new evidence, consisting of publications in the Montgomery Advertiser on April 24 and June 5, 1921. These advertisements, especially that of June 5th, constituted a public offering of this stock.

Under section 3 of the Blue Sky Law it is declared unlawful "to sell or offer for sale in this state, by means of any advertisement, circulars, or prospectus, or any other form of public offering," securities of the classes defined, without compliance with the law.

This act for the protection of investors contemplates certain public information on file, the issuance of a permit, and the giving of a bond as indemnity. The publication in evidence is made unlawful. That it was followed up by personal solicitation in the following autumn, and sales consummated thereby, does not relieve such sales of the taint of illegality. Issuing such publication was the beginning of an illegal business, which could not become legal, except by a compliance with the law. It was not necessary, therefore, to show that actual sales were influenced by these advertisements.

[3] This brings us to the question, pretermitted in the former decision, viz.: Can an officer of a corporation, receiving the funds paid to his company for stock, set up this illegality of the sale in defense of an action for an accounting, or in trover for the conversion of such funds? We answer, No. The statement of the proposition is enough to show no other answer can comport with law or morals. His relation to the fund, as well as the transactions from which it was derived, is wholly different from that of the subscribers. Receiving the fund as that of the corporation is an admission of its title. In an action for an accounting, no other proof is necessary. The contract with the subscribers was fully executed, so far as relates to the question in hand. The action is not for enforcement of nor dependent up-

on proof of the contract. The duty of the officer holding the fund in trust was the same as between him and his company, however the fund was derived. The subject-matter of the suit is a fund in hand, not how it was acquired. Pride v. Commercial Union Ins. Co., 9 Ala. App. 348, 63 So. 803; Ex parte Pride, 185 Ala. 672, 64 So. 1019; Gibson v. Knard, 96 Ala. 419, 11 So. 482; Thomas v. Little, 209 Ala. 590, 96 So. 896; Sales-Davis Co. v. Henderson-Boyd Lbr. Co., 193 Ala. 166, 69 So. 527; General Elec. Co. v. Town of Ft. Deposit, 174 Ala. 179, 56 So. 802; Yarborough's Adm'r v. Avant, 66 Ala. 526; Ingersoll v. Campbell, 46 Ala. 282; Gunter v. Leckey, 30 Ala. 591; Planters' Bank v. Union Bank, 83 U. S. (16 Wall.) 470, 21 L. Ed. 573; 2 C. J. 746; 2 R. C. L. p. 831, § 14.

The case of Ellis v. Batson, 177 Ala. 313, 58 So. 193, relied upon by appellant, is in harmony with the rule stated. There the county treasurer had, in violation of law, employed an agent or deputy to receive and disburse public funds. The relation between the parties was illegal. To prove the contract on which the action was founded was to prove it illegal—prove there was no lawful contractual relation between them.

[4] With the view of rendering judgment for the amount of funds received by defendant, less the amounts expended on or before January 4, 1922, the trial court, in his findings of fact, made itemized lists of expenditures before and after that date, resulting as follows:

Expended to January 4, 1922................ $ 4,425 95
Expended after January 4, 1922............  3,554 59
Balance transferred to another company..  3,354 65
                                          ──────────
    Total .................................. $11,335 19

The trial judge observes that this exceeds the amount which plaintiff traces to defendant's hands. This did not exceed $9,600 or $9,700. This difference, he suggests, may arise by more funds coming to his hands, or by errors in amount expended to January 4th. The testimony as to expenditures being wholly from defendant, the court held him bound by expenditures after that date, as given by him, and gave judgment for $6,909.24, the aggregate of the last two items above, with interest thereon.

Appellant presents numerous assignments of error attacking this method of stating the account and the result obtained. We find no special fault with this method of stating the account, but have thought best to review these statements of account in connection with the evidence.

[5] We find errors intervening here. The court correctly allowed items of expenditure incurred before, but paid after, January 4th, but overlooked some items of that class. We note the following:

January 5th. Foshee Lumber . Company, lumber for derrick, $302.66. Under the evidence that bill of lumber was bought in December. The same item is listed by the court on the account of expenditures prior to January 4th, thus showing duplication in the accounts.

January 26th. Guy wires for derrick, $20.24. Under the evidence this bill was made in December, and not presented for payment until January 26th.

January 11th. National Supply Company, $74.40. This item is charged twice of same date in list of expenditures after January 4th. On the first trial the witness gave the date of payment of this item as above, with explanation that some of the bills were incurred before January 4th. On the last trial the witness gives this as an item of January 3d, and it was so listed in the account of such expenditures.

It further appears that in the list of items charged to defendant as expended after January 4th, some items are duplicated, or charged twice. Among these we note:

January 7th and 9th. $403.74. It is true this item is mentioned as of each of these dates, but the testimony as to the purpose of the expenditure is given only once—for Frank Jones' salary account. The difference of two days in date might easily arise from testifying at one time from a check and the other from a bank statement showing date cashed. This is more probable than two items of these exact amounts including odd cents.

January 13th and 19th. $287.50. The evidence was that this item was paid on January 13th; later it is given as bill of Dixie Coal Company, bought on the 12th. We find no evidence of an item of like amount on January 19th.

January 27th. Two items, each $30.75. The evidence first gives merely date and amount; later it is given as paid Hobbie for wood of same date. The presumption is the same item is meant.

The judgment will be here corrected, eliminating the above items, aggregating $1,193.69. Thus restated, the account stands:

Balance due January 4, 1922 (as found by
  trial court) ............................ $6,909 24
Less errors above stated..................  1,193 69
                                           ──────────
Balance due January 4, 1922...............  $5,715 55
Interest from January 4, 1922, to January
  22, 1925 .................................  1,394 59
                                           ──────────
True amount due January 22, 1925.......... $7,110 14;

—for which amount judgment is here rendered.

Corrected and affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.