(103 So. 54).

## HOPE OF ALABAMA LODGE OF ODD FELLOWS v. CHAMBLESS.
### (3 Div. 669.)

(Supreme Court of Alabama. Jan. 22, 1925.)

1. **Associations ⟜15(1)—Equity treats active members as owners of properties in trust for community interest.**

Equity treats active members of unincorporated, voluntary, nonbusiness association as owners of properties in trust for community interest.

2. **Associations ⟜24—Rule as to effect on property of incorporation, stated.**

When there is an incorporation of a voluntary nonbusiness association, participated in and authorized by a majority of its membership, the legal title of its properties passes to the corporation, but if incorporation is participated in and authorized by less than a majority, the title remains in trust for the majority membership, or in abeyance for the unincorporated association.

3. **Associations ⟜18—Conveyance to trustee, and mortgage executed by trustee for association's benefit, enforceable in equity, notwithstanding prior incorporation by less than majority of membership.**

Where fraternal nonbusiness association continued to function as such, notwithstanding prior incorporation in which less than a majority of the membership had participated, and a majority of its members, after a meeting duly called for that purpose, authorized duly elected trustees to convey association's property to certain person to enable such person to mortgage property, or procure extension of existing mortgage, in order to prevent foreclosure of existing mortgage, the conveyance to such person and mortgage executed by him for such purpose will be enforced in equity, even if such trustees were not de jure trustees, since person to whom land was conveyed for such purpose was a de facto trustee.

4. **Subrogation ⟜23(1)—Rights of mortgagee under old mortgage inured to benefit of mortgagee furnishing moneys for its discharge.**

Rights of mortgagee under old mortgage inured, in equity, to benefit of mortgagee who furnished moneys for its discharge, to extent of moneys so procured and used by mortgagor.

5. **Associations ⟜16—Members bound, in equity, by trustees' mortgage by long acquiescence with full knowledge of facts.**

Members of voluntary, fraternal, and nonbusiness association will be bound, in court of

equity, by mortgage of their trustees by long acquiescence with full knowledge of the facts.

**6. Associations 🗝15(1)—Defect in execution of deed from trustees to certain person or such person's mortgage for association's benefit, will not be permitted to defeat rights of persons holding by mesne conveyances from such person.**

Where members of association authorized duly elected trustees to convey property to certain person to enable such person to execute mortgage to avoid foreclosure of existing mortgage, any mere defect in execution of deed to such person, or of his mortgage, will not, in equity, be permitted to defeat the rights of those holding by mesne conveyances from such person.

**7. Associations 🗝18 — Mortgage executed by trustee, to whom property was conveyed by duly elected trustees of association for such purpose, held enforceable in equity, though successors to former trustees were not appointed under statute.**

Where members of voluntary, fraternal, nonbusiness association authorized duly elected trustees of association to convey property 'to certain person, to enable such person to execute mortgage to avoid foreclosure under existing mortgage, the mortgage so executed for such purpose was enforceable in equity, though successors to previous trustees of association were not appointed by register, under Code 1907, § 6098, since such statute was not conclusive, the association having a common-law right to elect their trustees to act on behalf of the association, and to hold its properties.

**8. Appeal and error 🗝987(3)—Statute entitling Supreme Court to weigh evidence on review of chancellor's decision, applies only where chancellor did not have advantage of seeing witnesses.**

Code 1907, § 5955, subd. 1, providing that in chancery no weight shall be given chancellor's decision on the facts, but that the Supreme Court shall weigh the evidence, applies only where the judge trying the issue had not the advantage of seeing the witnesses.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill in equity by the Hope `of Alabama Lodge of Odd Fellows against J. A. Chambless. From a decree dismissing the bill, complainant appeals. Affirmed.

Arrington & Arrington, of Montgomery, for appellant.

The power of appointing trustees can be exercised only by those to whom it is expressly given, or, if not given to any one, by the register in chancery. Code 1907, § 6098; Busbee v. Thomas, 175 Ala. 433, 57 So. 587; Perry on Trusts (2d Ed.) 294; 28 A. & E. Enc. (2d Ed.) 958; Allison v. Little, 85 Ala. 512, 5 So. 221; Malone v. Lacroix, 143 Ala. 659, 41 So. 724; Lecroix v. Malone, 157 Ala. 435, 47 So. 725. On the death of the trustees the fee remained in abeyance until new trustees were appointed. It vested in appellant upon its incorporation. Lecroix v. Malone, 157 Ala. 434, 47 So. 725; Whitehead v. Whitehead, 142 Ala. 163, 37 So. 929; Read v. Rowan, 107 Ala. 366, 18 So. 211; Allison v. Little, 85 Ala. 512, 5 So. 221; McDougald's Adm'r v. Carey, 38 Ala. 320; Walker v. McPherson, 199 Ala. 486, 74 So. 449; Gewin v. Pilgrim, 166 Ala. 345, 51 So. 947, 139 Am. St. Rep. 41. Laches cannot be imputed or limitations started when there is no one to sue or be sued. Lecroix v. Malone, 157 Ala. 434, 47 So. 725; Underhill v. Mobile F. Ins. Co., 67 Ala. 45.

Wm. F. Thetford, of Montgomery, for appellee.

A court of equity treats the .members of a voluntary association as the owners of land held in trust for the association. First Nat. Bank v. Winchester, 119 Ala. 168, 24 So. 351, 72 Am. St. Rep. 904. Only such rights as are vested in the members can pass to a corporation formed from a majority of the members. Gewin v. Mt. Pilgrim B. Church, 166 Ala. 345, 51 So. 947, 139 Am. St. Rep. 41. And before title can pass it must be shown that a majority of the members were parties to the incorporation. Walker v. McPherson, 199 Ala. 486, 74 So. 449. The fact the legal title is in abeyance does not prevent the members from making a valid conveyance. First Nat. Bank v. Winchester, supra; 24 A. & E. Ency. of Law, 340. The members of the lodge acquiesced, and are barred. Taylor v. A. & M. Ass'n, 68 Ala. 229.

THOMAS, J. The suit is by a corporation to quiet title, and for an accounting against an alleged joint owner. The answer and cross-bill denied the joint ownership, and set up a chain of title from J. S. Pinckard to and from trustees of the Odd Fellows, an unincorporated fraternal association not of a business nature, and facts of a changed statu quo that would prevent the complainant denying the trusteeship and defendant's title therefrom.

The proper predicate being laid for the introduction of parol evidence, tendencies of evidence were presented to the effect that the first named trustees of said lodge, Vaughn, Peoples, and Foster, and their successors in office, were its duly elected, qualified, and acting trustees; that a majority of the lodge membership in good standing (the real parties in interest; the cestuis que trustent), at a meeting of said unincorporated association, called after due notice of the time, place, and purpose, authorized said trustees, as its acting trustees, to convey its real property to Griffith, that he, with the trustees of the Damon Lodge, might extend the accrued mortgage thereon, or execute a new mortgage, and obtain the needed moneys

to prevent foreclosure. This was done through the Levystein mortgage, which, becoming due and unpaid two years thereafter, was duly foreclosed, Cooper purchasing at the foreclosure sale and conveying his interest to respondent.

The evidence on both sides shows marked changes of the statu quo. There was a tendency of evidence showing a change of affiliation of the local lodge, yet a continued local object, nonbusiness fraternal affiliation. The evidence showed a change of membership by death, suspension for nonpayment of dues, acquisition of new members, the death of the original trustees, the election of their successors by the association. The evidence for complainant showed an effort to incorporate the membership of the old lodge of 75 or more members by less than a majority thereof; it is shown that such action was by only a limited number of the old membership, who had notice or knowledge of the averred facts of the cross-bill as to the old mortgage, the giving of the new and subrogated instrument by which were obtained the moneys with which the old mortgage was paid.

The rule of subrogation, in a proper case, of one evidence of debt and discharged lien on real estate, for another furnishing the moneys so used, is well established in this jurisdiction. Woodruff v. Satterfield, 199 Ala. 477, 74 So. 948; Cook v. Kelly, 200 Ala. 133, 75 So. 953; Gibson v. Gibson, 200 Ala. 591, 76 So. 949; Hampton v. Counts, 202 Ala. 331, 80 So. 413.

[1, 2] A court of equity treats the active members of a voluntary nonbusiness association as the owners of its properties in trust for the community interest of the unincorporated society or association. This was in effect, the result of First Nat. Bank v. Winchester, 119 Ala. 168, 172, 24 So. 351, 72 Am. St. Rep. 904, as dealing with corporate property and the stockholders' interest therein, where the corporation was in abeyance. When there is an incorporation of such society or association, participated in and authorized by a majority of its membership, the legal title passes to the corporation (Robertson v. Business Boosters' Country Club, 210 Ala. 460, 98 So. 272); such is the result as to the legal title to the community property, if incorporated by a majority of the association's members. If incorporation is participated in and authorized by less than a majority of the lodge membership, the title to said properties would not vest in the corporation, but remain in trust for the majority membership, or in abeyance for the association unincorporated. This is the theory of our unincorporated church cases. Gewin v. Mt. Pilgrims Church, 166 Ala. 345, 51 So. 947, 139 Am. St. Rep. 41; Walker v. McPherson, 199 Ala. 486, 74 So. 449; Blount v. Sixteenth Street Baptist Church, 206 Ala. 423, 90 So. 602. Complainant's witness Mark Ligon makes clear the fact that the incorporation had was by less than a majority of the membership of said lodge having held for it the real properties in question. He fixed the membership of the number of members incorporating at 27 of the 75 original members; yet he fails to give the names of such members when tested on his cross-examination, and admitted that only seven or eight of the members were in good standing when the trust in Griffith was created or established by the deed to him for lodge purposes, to save the property from the old mortgage.

Under the respective facts averred by the bill and the cross-bill, both parties claimed title from Pinckard to Mason et al., as trustees for the unincorporated association or lodge, and that trusteeship was for and in behalf of its members as such in the community interest. In equity the membership of the lodge were the real parties in interest—the cestuis que trustent; as such they were the owners of the lodge property and its use, had the duty of its discharge from the old mortgage and debts, and in that effort had the right of its alienation as was done to Griffith and his grantee. The decisions of this court abound in illustrations of how the equitable owners, in proper cases, have been required to be brought before the chancery court as the real parties in interest and necessary to the decree; and how such parties have been protected or held responsible for that interest, according to the justice and equity of the premises. Taylor v. A. & M. Assoc., 68 Ala. 229; First Nat. Bank v. Winchester, 119 Ala. 168, 24 So. 351, 72 Am. St. Rep. 904; Lebeck v. Ft. Payne Bank, 115 Ala. 447, 22 So. 75, 67 Am. St. Rep. 51; Town of Carbon Hill v. Marks, 204 Ala. 622, 86 So. 903; Hines v. Seibels, 204 Ala. 383, 86 So. 43; Chattanooga Savings Bank of Crawford, 206 Ala. 530, 91 So. 316; Hodge v. Joy, 207 Ala. 198, 92 So. 171; Robertson v. Business Boosters' Country Club, 210 Ala. 460, 98 So. 272; Id., post, p. 621, 103 So. 576.

[3] If there was evidence of an alleged changed affiliation of the lodge in question, still, it was shown that thereafter the lodge continued to function as the same fraternal, nonbusiness association, that its real properties were encumbered as before by the same mortgage, which was past due, and being pressed for payment and threatened of foreclosure; it is further shown that it was to meet this pressing situation that the lodge authorized the execution of the deed to Griffith in order that he might prevent foreclosure, as was averred in the cross-bill; it is further shown that those who executed said deed were elected by the lodge as and were its acting trustees, and that they were instructed and authorized, at a due session of the lodge, and a majority of its members, after due notice for that purpose, to make

or procure a payment of the old mortgage by its renewal or by the new mortgage. That is the effect of the action of the lodge itself and a majority of its members. Whatever the legal status of those acting as its trustees may be if challenged by direct action of the lodge, in this action, if they were not de jure trustees, Griffith was a de facto trustee, constituted and elected by the majority of the members of the lodge, acting for the lodge and its membership, with express instruction of the cestuis que trustent as to the property in question. Under the circumstances averred and proved, the conveyance to Griffith and his action will be recognized in a court of equity as by the trustees for the parties beneficially interested. Cicotte v. Anciaux, 53 Mich. 227, 234, 18 N. W. 793; Parish of Bellport v. Tooker, 29 Barb. (N. Y.) 256; Id., 21 N. Y. 267; First Presbyterian Church of Gallipolis v. Smithers, 12 Ohio St. 248; Nolde's Appeal, 2 Monag. (Pa.) 169, 15 A. 777; St. Luke's Church v. Mathews, 4 Desaus. (S. C.) 578, 6 Am. Dec. 619, 626. This is an application of the rule of the common law in this respect. Turner v. Baynes, 2 H. Bk. Rep. 559; Ganville v. Utting, 9 The Jurist (1845) 1081. This was the theory upon which was justified the expenditures by Robertson along the line of the purpose and by acquiescence of the members of the Business Boosters' Country Club, 210 Ala. 460, 98 So. 272; Id., post, p. 621, 103 So. 576.

[4] It is shown without dispute that the moneys so procured by Griffith, under and pursuant to the object and trust created by his deed, were used in the discharge of the former valid and unquestioned mortgage of the lodge; and the rights of the mortgagee under the old mortgage, in equity, inured to the benefit of the mortgagee furnishing the moneys for its discharge, and to the extent of the moneys so procured and used by the lodge. Woodruff v. Satterfield, 199 Ala. 477, 74 So. 948.

This is aside from the changed circumstances and laches of the respective parties that is evidenced by the lapse of time and nonaction as follows: The Griffith deed was of date May 15, 1911; the Levystein mortgage, dated February 22, 1912, due on February 22, 1914, and its foreclosure May 12, 1914; the incorporation, of date March 14, 1921, the petition therefor only signed by Lyons, Ligon, and Fortson. The present bill was filed April 6, 1921. It would appear that the time of the incorporation bears a close relation to that of the filing of the bill, rather than to a prompt, seasonable, and bona fide disaffirmance of the acts now challenged thereby. The testimony of Ligon shows that the complaining members of the old lodge knew of the challenged acts of Griffith, respectively, in the years 1911, 1912, and 1913.

Aside from the foregoing, there was evidence, warranting the decree, of the due election of acting trustees to the office of trustee vacated by the deaths of the trustees named in Pinckard's deed, and that the election thereof was by the lodge and a majority of its membership. Voluntary unincorporated associations not of a business nature were recognized to have the right under the common law to elect their agents, officers, and trustees to act in behalf of the association, and to hold its properties. 34 Cyc. 1131; 24 Am. & Eng. Encyc. of Law 340. A necessary incident to that right is that of filling vacancies occurring in such office or trusteeship, and the acts of such incumbents, acting within the line of their appointment and election, no question of fraud intervening, will be recognized in a court of equity as the acts of the association and its cestuis que trustent. Stewart v. White, 128 Ala. 202, 208, 30 So. 526, 55 L. R. A. 211; Barton v. Fitzpatrick, 187 Ala. 273, 65 So. 390; Gewin v. Mt. Pilgrim Church, 166 Ala. 345, 51 So. 947, 139 Am. St. Rep. 41; Blount v. Sixteenth Street Baptist Church, 206 Ala. 423, 425, 90 So. 602.

This rule applied to a business corporation will, under the complainant's phase of the evidence, support the decree and be applied to the voluntary nonbusiness association in the discharge of the old and valid mortgage by the extension of the debt in its renewed form.

The distinction between the corporate entity, on the one hand, and the interest of stockholders and cestuis que trustent, on the other, to the end that justice may be obtained as between the real owners of the property and the creditor of the corporation in abeyance, was the subject of discussion in First Nat. Bank v. Winchester, 119 Ala. 168, 173, 24 So. 351, 72 Am. St. Rep. 904. The court said:

"The corporation represents the entire estate. But, that presupposes a case where no antagonistic relation to the corporation, set up by the unanimous act of the stockholders, is the subject-matter of investigation. A conflict of that character presents a different question. We are, in that case, required to consider how far the unanimous voice of the stockholders may modify or control corporate action in reference to the management and disposition of corporate property. Such is the question here presented. All the stockholders mortgaged the property to secure their debt, and the substantial, beneficial ownership being necessarily in them and held by the artificial creature of the law, the corporation, for their exclusive behoof, we hold that their conveyance passed that interest against the equitable demands of subsequent purchasers or incumbrancers with notice from the corporation. We have, in support of this conclusion, an elaborate discussion, leading to the same result, by the Court of Appeals of Maryland, in Swift v. Smith, 65 Md. 428, 57 Am. Rep. 336. It was there held that a purchaser of shares of stock from one who owned all the stock of the company, was bound

in equity by a mortgage executed by the sole owner while such, upon the corporate property."

See, also, Felsenthal Co. v. Northern Assur. Co., 284 Ill. 343, 120 N. E. 268, 1 A. L. R. 602, notes page 610 et seq., as to individual acts of stockholders binding a corporation.

[5] In McKleroy v. Gadsden L. & I. Co., 126 Ala. 184, 28 So. 660, it was held that when it comes to the destruction "of the association and a distribution of its assets, the cestuis que trust, the stockholders, must be parties to the litigation. The corporation, in such case, has no authority to represent them singly or as a whole." If stockholders are held to have acquiesced by inactivity after full knowledge of the facts (Taylor v. A. & M. Assoc., 68 Ala. 238; Robertson v. Business Boosters' Country Club, 210 Ala. 469, 98 So. 272), there being no fraud, by the same token and under the same facts the members of the voluntary, fraternal, and nonbusiness association will be bound in a court of equity by their long acquiescence, with a full knowledge of the facts leading to and entering into the giving of the Levystein mortgage. And especially is this acquiescence to be given controlling effect after a materially changed statu quo. Taylor v. A. & M. Assoc., 68 Ala. 238, 239.

[6] Assuming full authority to act by the association in giving the first mortgage, and in its payment from the proceeds of the Levystein mortgage, in a court of equity any mere defect in execution of the deed to Griffin, or of his mortgage to Levystein, will not be permitted to defeat the rights of said grantee, or those of Chambless, holding by mesne conveyances from Griffith. Nolen v. Henry, 190 Ala. 540, 67 So. 500, Ann. Cas. 1917B, 792; Gillespy v. Hollingsworth, 169 Ala. 602, 53 So. 987. See, also, Robertson v. Business Boosters' Country Club, 210 Ala. 460, 98 So. 272; Id., post, p. 621, 103 So. 576.

[7] The concurrent provisions of section 6098 of the Code of 1907, for the appointment by the register, were not exclusive of this common-law right where action had been taken thereunder. They merely furnished an additional means of securing the appointment, affording the opportunity for resignation and removal and settlement of a trusteeship, and to prevent trusts failing for the lack of a trustee to hold the property for the association and for its members, the real cestuis que trustent. Malone et al., Trustees, v. Lacroix, 143 Ala. 657, 41 So. 724; Allison v. Little, 85 Ala. 512, 5 So. 221.

The execution of the deed to Griffith was in good faith, to save the property for the members of the lodge, and for the continued use and purposes of the association. The cestuis que trustent were relieved of the obligation of the first mortgage, received the benefit of the new mortgage, and by reason thereof they continued to enjoy the property in its community use. Under these facts all the members are held in equity as acquiescing therein, and ratifying and approving all the acts of said acting trustees to that end. In Taylor v. A. & M. Assoc., 68 Ala. 229, 238, 239, it is said:

" * * * It is shown very fully that the association had ratified and approved all the acts of the executive committee in this transaction, not only the mode adopted in borrowing the money, but the execution of the mortgage. We do not mean, that it is shown that there was assent to, and confirmation of the transaction, expressed in words. That is not essential, for ratification is more often implied from the acts and conduct of parties having an election to avoid or to confirm, than found expressed in words. And it is implied, whenever the acts and conduct of the principal, having full knowledge of the facts, is inconsistent with any other supposition than that of a previous authority, or an intention to abide by the act, though it was unauthorized. * * * Having received and retained the benefits of this transaction, with full knowledge of all the facts, the association has ratified and confirmed it, unless intentional fraud is imputed, for which there is neither room nor reason. It is too late now, as it was when the judgment creditor Cleveland obtained judgment, and when he acquired a mere general lien by the issue of execution, for the association to impugn the transaction. The ratification may rest in parol; it nevertheless operates as an estoppel on the association. In a court of equity, an estoppel resting in parol may bind the legal estate in lands. McPherson v. Walters, 16 Ala. 714, 50 Am. Dec. 200; Walker's Heirs v. Murphy, 34 Ala. 591."

In a court of equity the question of the effect of a changed statu quo, and the inequity of permitting a claim or right to be asserted or enforced under such circumstances and conditions (Wooddy v. Matthews, 194 Ala. 390, 401, 69 So. 607; Hauser v. Foley & Co., 190 Ala. 437, 441, 67 So. 252; Rives v. Morris, 108 Ala. 527, 18 So. 743; Raisin Fertilizer Co. v. McKenna, 114 Ala. 274, 21 So. 816; Grier v. Campbell, 21 Ala. 327), or when, by a guilty silence, one induces or permits another to alter his property rights to his prejudice by reason of such silence, is discussed in Ivy v. Hood, 202 Ala. 121, 79 So. 287, and Sims v. Riggins, 201 Ala. 99, 77 So. 393. If the same be here applicable, under the facts averred in the cross-bill as to the trusteeship, these authorities need not now be further considered.

It is insisted that after the death of the original trustees the title was in abeyance until new trustees were appointed, as provided by law. The corporation itself, in First National Bank v. Winchester, supra, was in abeyance by reason of its reduction to one stockholder, and the legal title was thereby in abeyance; held, to furnish no reason why the stockholder could not execute a mortgage which would be enforced in a court of equity. If it be argued that the title

to the instant property was in abeyance by reason of the death of the trustees and the failure to appoint statutory trustees or successors in the trust before and at the time of the Griffith deed and mortgage, this would furnish no sufficient reason, in a chancery court, why said conveyance was not binding per force of the resolutions for its sale by more than a majority of the membership authorizing that action and mortgage to save the property for the community association use and that of its then membership.

The case of Allison v. Little, 85 Ala. 512, 517, 5 So. 221, is not to a contrary effect. There the action was for the statutory penalty, and the authority to sue for the unincorporated church was challenged; the right of the register to appoint trustees to fill vacancies on that board was upheld. The court said, as to Little invoking the appointment as a party in interest, that he was not only a member of the congregation of the religious society which owned the property in controversy, "but this congregation had authorized him to act as one of the trustees, with others named." In the case of Malone et al., Trustees, v. Lacroix, 143 Ala. 657, 41 So. 724, the deed was to the trustees named, and "to their successors in office *chosen and appointed according to the statute* of the state of Alabama." (Italics supplied.) The register's appointment, pursuant to the statute, was upheld. In Busbee v. Thomas, 175 Ala. 423, 432, 57 So. 587, 590, the court said:

"The right of the plaintiffs to sue in the capacity of trustees was duly and reasonably shown. They were elected as such, as shown by the minutes of the board, and were serving in that capacity. If this were not enough, they were also appointed as such by a regular and valid order of the register in chancery, upon proceedings which were instituted and conducted in accordance with the statutes therefor provided. Sections 6098, 6099, Code 1907.

"We are of the opinion, however, that the election of these trustees by even a minority of the full membership of the board, a majority of the membership being vacant, was not void, though the exercise of the power conferred by the deed to fill ensuing vacancies may have been conferred on a majority of the board. And we further hold that, even if such election were voidable at the instance of the cestuis que trustent, it could not be thus assailed by strangers thereto in a collateral proceeding. See Gaines v. Harvin, 19 Ala. 491, 498. Nor should such election, though not strictly regular, be declared void where there has been no fraud, and where it has remained unquestioned for many years. 28 Am. & Eng. Ency. Law (2d Ed.) 966."

[8] However, the whole matter might have been concluded under the rule of Hackett v. Cash, 196 Ala. 403, 72 So. 52. The trial judge, without a jury, heard the witnesses in open court. The rule of Hackett v. Cash, supra, has been applied to such trials in equity. Ray v. Watkins, 203 Ala. 683, 85 So. 25; Andrews v. Grey, 199 Ala. 152, 74 So. 62. That is to say, the provisions of the statute (Code, 1907, § 5955, subd. 1) providing that on chancery appeal no weight shall be given the chancellor's decision upon the facts, but that the Supreme Court shall weigh the evidence, apply only where the judge trying the issue had not the advantage of seeing the witnesses. Whether relief was denied by way of laches or acquiescence, or by reason of evidence showing the trusteeship and authority to convey and to obtain money to discharge a valid incumbrance on the property, we will not disturb the finding of the trial court.

The judgment of the circuit court, in equity, is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.